Erin Rose Ronstadt, SBN 028362
Clayton Warren Richards, SBN 029054
RONSTADT LAW, PLLC
P.O. Box 34145
Phoenix AZ 85067
Phone: (602) 615-0050
Fax: (602) 761-4443
erin@ronstadtlaw.com
clayton@ronstadtlaw.com

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Laura T. Romero,<br><br>  Plaintiff,<br>v.<br><br>Reliance Standard Life Insurance Company,<br><br>  Defendants. | No.<br><br>**COMPLAINT** |

For her claims against Reliance Standard Life Insurance Company, an Employee Retirement Income Security Act insurer and plan fiduciary ("RSLIC" or "Defendant"), Plaintiff Laura T. Romero ("Ms. Romero" or "Plaintiff") alleges as follows:

## *Jurisdiction, Venue, and Parties*

1. This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA").

2. Ms. Romero was a participant and beneficiary of the Amgen Inc. Master Benefits Plan (the "Plan") as an employee of Amgen, Inc. ("Amgen").

3. Amgen is a California company headquartered in Thousand Oaks, California.

4. The Plan is a purported ERISA benefit plan established and maintained by Amgen, Inc. for the benefit of its employees.

5. RSLIC fully insures Amgen employees for long-term disability ("LTD") benefits pursuant to policy LSC 97,200, policy number LTD 119478 (the "Policy").

6. RSLIC issued the Policy in the State of California.

7. RSLIC is a Plan fiduciary.

8. At the time Ms. Romero sought LTD benefits under the Plan, RSLIC administered LTD claims under the Plan and Policy and made final decisions regarding the payment of LTD benefits.

9. RSLIC has a duty to administer the Plan prudently and in the best interests of all Plan participants and beneficiaries.

10. Ms. Romero currently resides in Pima County, Arizona and has been a resident of Pima County at all times since becoming a Plan participant.

11. RSLIC has its principal place of business in the Commonwealth of Pennsylvania.

12. RSLIC is licensed and authorized to do business in Pima County, Arizona and resides and is found within Pima County within the meaning of the jurisdiction and venue provisions of ERISA, 29 U.S.C. § 1132 and 28 U.S.C. § 1391.

13. This Court has jurisdiction over the subject matter of this action under ERISA, 29 U.S.C. §§ 1132(a), 1132(e)(1), and 28 U.S.C. §§ 2201-02 (declaratory judgments).

14. Venue is proper in this Court under ERISA, 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS
### *Ms. Romero's Disability*

15. Ms. Romero suffers from a multitude of serious medical conditions, including the residual effects of a massive myocardial infarction in September 2018 requiring the surgical implantation of two stents. She also suffers from Postural Orthostatic Tachycardia Syndrome ("POTS"); cervical spondylosis with severe central spinal canal stenosis at two levels of the spine; Epstein-Barr Syndrome; severe fatigue; neuropathy; benign paroxysmal positional vertigo; and other conditions.

16. Ms. Romero's treating physicians endorsed her disability under the Policy beginning in May 2019.

17. In a medical review conducted on May 9, 2019, an RSLIC nurse consultant indicated Ms. Romero's "lack of work function" was supported by her physicians' certification of disability, her functional impairment, and her co-morbid medical conditions.

18. In a letter dated August 1, 2019, RSLIC approved Ms. Romero's LTD claim.

**Plan Language**

19. Ms. Romero is eligible for LTD benefits under Class 1 of the Policy.

20. Ms. Romero is eligible for benefits until age 67 as long as she is totally disabled from her "Regular Occupation."

21. "Total Disability" under the Policy is the insured's inability to "perform the material duties of his/her Regular Occupation."

22. Specifically, "Totally Disabled" and "Total Disability" mean, that as a result of an Injury or Sickness, during the Elimination Period and thereafter an Insured cannot perform the material duties of his/her Regular Occupation; (1) "Partially Disabled" and "Partial Disability" mean that as a result of an Injury or Sickness an Insured is capable of performing the material duties of his/her Regular Occupation on a part-time basis or some of the material duties on a full-time basis. An Insured who is Partially Disabled will be considered Totally Disabled, except during the Elimination Period; and (2) "Residual Disability" means being Partially Disabled during the Elimination Period. Residual Disability will be considered Total Disability."

23. The Policy defines "Regular Occupation" as "the occupation the Insured is routinely performing when Total Disability begins," as that occupation is generally performed in the national economy.

**Ms. Romero's Employment**

24. Amgen, Inc. employed Ms. Romero as a Senior Biopharmaceutical Representative.

25. As a Senior Biopharmaceutical Representative, Ms. Romero was responsible for "executing marketing strategy"; "promoting Amgen products"; "achiev[ing] territory sales" by executing planned marketing strategies, "executing planned programs," and

"scheduling and following-up with medical educational programs"; servicing and managing client accounts; and providing feedback on marketing strategies; among other duties.

26. Core Competencies of the job include, "Planning and Organizing Work, Engaging Others through Effective Communication, Drive to Achieve, Individual Leadership and Impact."

27. On September 5, 2018, Ms. Romero was hospitalized with a myocardial infarction.

28. Diagnostic testing conducted at the time revealed 95% stenosis of her left anterior descending artery.

29. Ms. Romero last worked on May 1, 2019 due to her disability.

### Ms. Romero's LTD Benefits

30. In June 2019, RSLIC received Ms. Romero's application for LTD benefits and began evaluating her eligibility.

31. In a letter dated August 1, 2019, RSLIC approved Ms. Romero's claim for LTD benefits.

32. RSLIC's award of LTD benefits was based on Ms. Romero's "multiple ongoing [medical] issues," including cardiac, neurological, hematologic, and immunologic concerns.

33. RSLIC demanded updated medical records in February-March 2020 during the onset of the COVID-19 pandemic.

34. RSLIC falsified dates on correspondence sent to Ms. Romero throughout the claim, which it has a pattern and practice of doing in claims.

35. RSLIC knew that Ms. Romero had pending medical appointments for April and May 2020 but terminated the claim prior without waiting for records from these pending appointments.

36. In a letter dated April 30, 2020, RSLIC terminated Ms. Romero's LTD benefits (the "First Denial").

37. RSLIC's decision to terminate the claim during a pandemic when Ms. Romero was doing her best to seek medical treatment but facing obstacles in doing so due to COVID-19 was egregious conduct and a breach of its fiduciary duties.

38. RSLIC based its denial to terminate benefits on the opinion of its own nurse consultant and medical director.

39. RSLIC's medical director, John del Valle, M.D. indicated he had spoken with Ms. Romero's treating naturopath, Ms. Michelle Thatcher, who noted "there were no significant findings on exam or via testing verifying the presence of a condition that would explain the claimant's numerous symptoms."

40. Dr. Del Valle stated Ms. Thatcher "did not see evidence of a condition that rose to a level to preclude the claimant's work capacity during the period in question."

41. Notably, Dr. Del Valle did not attempt to contact any of Ms. Romero's treating specialist physicians, including her neurologist, cardiologist, or ear-nose-and-throat specialist.

42. Despite acknowledging evidence of the reactivation of Epstein-Barr Syndrome and other medical evidence, Dr. Del Valle concluded Ms. Romero has no impairment that would preclude her working in her regular work capacity.

43. Two days prior to the First Denial, RSLIC's claims representative, Annette Weitzel, called Ms. Romero to explain RSLIC was terminating LTD benefits.

44. Ms. Romero explained RSLIC did not have the most recent treatment note from her primary care provider and notified RSLIC of an upcoming follow-up appointment with her neurologist.

45. Again, RSLIC was aware it did not have all relevant medical evidence prior to issuing the First Denial.

46. RSLIC nevertheless issued the First Denial.

47. On October 20, 2020, Ms. Romero appealed through counsel (the "Appeal").

48. With the Appeal, Ms. Romero submitted objective evidence supporting her ongoing disability under the Policy, including an independent functional capacity evaluation ("FCE"), an independent neuropsychological evaluation, and updated treatment records.

49. The FCE examiner concluded, after administering a battery of tests, that Ms. Romero could only sit, stand, or walk for a combined three-and-a-half hours in a day with frequent breaks, and that she is "unable to sustain a competitive work pace on a regular and consistent basis . . . ."

50. The FCE examiner noted Ms. Romero gave "full and consistent effort" during testing.

51. During the Appeals process, Ms. Romero received a fully favorable Social Security determination.

52. RSLIC demanded an overpayment of $14,507.38, which Ms. Romero paid while her claim was denied.

53. Despite knowing about the Social Security determination, RSLIC failed to request the Social Security file or meaningfully consider the Social Security award in evaluating the claim.

54. In a letter dated December 11, 2020, RSLIC purported to send to Ms. Romero's counsel the report of peer reviewer Jeremy Hertza, Psy.D. (the "adverse evidence").

55. RSLIC's internal notes reflect Dr. Hertza was asked to only consider the neuropsychological testing Ms. Romero submitted with the Appeal, but not the functional capacity examination that supported work-preclusive physical restrictions and limitations.

56. Dr. Hertza opined that no functional impairment was supported based upon the neuropsychological testing.

57. In the December 11, 2020 letter, RSLIC demanded a response by December 25, 2020, Christmas Day, to the adverse evidence.

58. Ms. Romero's legal counsel never received the letter with adverse evidence.

-6-

59. RSLIC's internal notes reveal it made no effort to confirm Ms. Romero's counsel received the adverse evidence.

60. RSLIC had previously emailed with Ms. Romero's legal counsel. Yet, it chose not to email the adverse evidence, which it could have easily done.

61. Consequently, Ms. Romero's counsel did not respond to the adverse evidence.

62. In a letter dated December 29, 2020, having not received a response from Ms. Romero's counsel, RSLIC upheld its termination of Ms. Romero's benefits (the "Final Denial").

63. RSLIC relied on Dr. Hertza's opinion in the Final Denial.

64. RSLIC unreasonably ignored the FCE report supporting Ms. Romero's physical disabling conditions.

65. Ms. Romero would subsequently be diagnosed with POTS in early 2021, which could have been provided to RSLIC if she had been given a reasonable opportunity to respond to the adverse evidence.

66. RSLIC denied the claim despite a fully favorable Social Security determination.

67. RSLIC can grant claimant extensions for responding to adverse evidence on appeal.

68. RSLIC routinely grants claimants extensions for responding to adverse evidence on appeal.

69. RSLIC issued the Final Denial knowing information was missing from the administrative record.

70. Ms. Romero cannot perform the material duties of her Regular Occupation or any other occupation and therefore comes within the definition of Disability under the Plan.

71. Ms. Romero exhausted her administrative remedies and timely filed this lawsuit.

# COUNT I
### (Recovery of LTD Plan Benefits)

72. All other paragraphs are incorporated by reference.

73. The Plan and Policy represent LTD coverage and a promise to provide LTD benefits until Ms. Romero is no longer Disabled under the terms of the Policy.

74. Ms. Romero continues to be Disabled from her Regular Occupation.

75. Ms. Romero has claimed the benefits under the Policy to which she is entitled.

76. Ms. Romero reasonably expected that her medical conditions met the requirements of Disability as defined by the Policy and that she would receive benefits under the Policy until she reaches age 67 or until she was no longer disabled.

77. Despite the coverage of Ms. Romero's Disability, RSLIC improperly terminated her LTD benefits in breach of the Plan and ERISA.

78. RSLIC's and the Plan's collective conduct was arbitrary, capricious, an abuse of discretion, not supported by substantial evidence, and clearly erroneous.

79. Ms. Romero is entitled to *de novo* review.

80. California Insurance Code § 10110.6 applies to the Plan and Policy, which voids any discretionary clauses or delegation of discretionary authority to RSLIC.

81. RSLIC failed to provide Ms. Romero's counsel with the adverse evidence upon which it intended to rely in violation of 29 C.F.R. § 2560.503-1(h)(4)(i).

82. RSLIC's demand for a response to adverse evidence by Christmas Day is an abuse of discretion and breach of its fiduciary duties.

83. Ms. Romero is entitled to supplement the administrative record as part of this litigation.

84. Ms. Romero's supplementation of the administrative record is warranted, because RSLIC's many procedural errors effectively denied her a full and fair hearing.

85. By supplementing the administrative record based on RSLIC's procedural violations, a court can reconstitute Ms. Romero's record as it would have been without the

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

administrator's error. *See Lewis v. Unum Life Ins. Co. of Am.*, 450 F. Supp. 3d 1019 (D. Ariz. 2020).

86. Had RSLIC allowed Ms. Romero a reasonable opportunity to respond to adverse evidence on appeal, Ms. Romero could have provided evidence of her newly identified POTS diagnosis, which explains many of the debilitating symptoms plaguing her and entitling her to ongoing benefits.

87. RSLIC knew Ms. Romero had additional medical evidence to provide when it denied the claim.

88. Ms. Romero is informed and believes that RSLIC hurriedly issued the Final Denial to get Ms. Romero's claim off its books and release reserves before the end of the fiscal year.

89. Ms. Romero is informed and believes that RSLIC chooses its medical reviewers based on the segmentation, or tiers, assigned to claims.

90. Ms. Romero's claim was classified as segment 1.

91. Ms. Romero is informed and believes that RSLIC uses segments to manage its financial liability and eliminate otherwise valid claims. It does this, in part, by using the segmentation process to determine which biased medical reviewers or vendors shall be assigned to claims.

92. Ms. Romero is informed and believes that RSLIC's financial conflict of interest directly influenced its selections of medical reviewers.

93. Instead of evaluating a participant's eligibility based on the applicable Policy language and medical evidence, RSLIC makes claims decisions based on the claims resources and financial risk it faces on certain claims.

94. RSLIC did not properly consider the available evidence when terminating Ms. Romero's benefits.

95. RSLIC failed to conduct a full and fair review.

96. RSLIC misstated medical evidence for its own financial benefit, *e.g.,* it excessively relied on biased medical reviews provided by in-house medical consultants.

97. The consultants ignored critical medical evidence at the instruction of RSLIC.

98. RSLIC relied on findings that constitute "clearly erroneous findings of fact" to deny Ms. Romero's benefits.

99. RSLIC based its decision on unreliable and inaccurate information. When confronted with this knowledge, RSLIC ignored the inaccuracies or created new reasons for denial.

100. RSLIC tainted its medical file reviewers by giving the reviewers inaccurate information regarding Ms. Romero, while also failing to provide its reviewers with relevant evidence.

101. RSLIC provided its reviewers and vendors with internal notes and financial information about the claim, compromising their ability to make "independent" medical determinations and creating further bias in reviews.

102. RSLIC routinely emphasizes information that favors a denial of benefits while deemphasizing other information that suggests a contrary conclusion.

103. RSLIC failed to properly consider the opinions of Ms. Romero's treating and examining physicians and other specialists.

104. In terminating Ms. Romero's LTD benefits, RSLIC completely disregarded evidence that Ms. Romero's conditions had not changed or improved.

105. RSLIC has no evidence that Ms. Romero's conditions changed or improved since it determined that she met the definition of Disabled in the Policy.

106. RSLIC used in-house reviewers in evaluating Ms. Romero's claim, because it knew that the in-house reviewers' recommendations would be unfavorable for the continuation of Ms. Romero's benefits.

107. The peer reviewer arbitrarily reached his opinion based on insufficient evidence or investigation.

108. RSLIC did not properly address the September 2020 FCE report submitted with her Appeal.

109. RSLIC failed to explain why it credited the physician reviewer over Ms. Romero's treating physicians.

110. RSLIC failed to adequately explain why it disregarded the findings of the Social Security Administration ("SSA").

111. RSLIC placed its financial interests ahead of Ms. Romero by demanding an overpayment during the appeals process.

112. The peer reviewer was not given the Plan or other important records before reaching his decision that Ms. Romero could perform work.

113. RSLIC engaged in other procedural irregularities, which it did to serve its own financial best interests.

114. RSLIC engaged in claim discussions to decide the directions of appeals without having reviewed the complete medical evidence, demonstrating its predetermined path of terminating benefits.

115. RSLIC intentionally gathered evidence to stack the deck in its favor and against Ms. Romero, such as the peer review report from Dr. Hertza.

116. RSLIC has a parsimonious claims handling history.

117. RSLIC failed to conduct a "meaningful dialogue" regarding Ms. Romero's claim.

118. The peer review report that RSLIC produced on appeal failed to substantively address the results of the FCE submitted with the Appeal.

119. Under the de novo standard of review, to be entitled to benefits Ms. Romero need only prove by a preponderance of the evidence that she is disabled.

120. Even under the abuse of discretion standard of review, RSLIC abused its discretion, because its decision terminating Ms. Romero's disability benefits was arbitrary and capricious and caused or influenced by RSLIC's, its reviewing physicians, and its vendors' financial conflicts of interest. These conflicts of interest precluded the full and fair review required by ERISA, 29 U.S.C. 1133(2) and 29 C.F.R. § 2560.503-1(g)(1) and (h)(2).

121. Ms. Romero is entitled to discovery regarding the effects of the procedural irregularities and structural conflict of interest that infiltrated the claims handling process and also regarding the effects of RSLIC's, reviewing physicians', its employees', and its vendors' financial conflicts of interest, biases, and motivations on the decision terminating Ms. Romero's LTD claim.

122. Under the de novo standard of review, Ms. Romero is entitled to discovery regarding, among other things, the credibility of RSLIC's medical reviews and RSLIC's lack of partiality due to its financial conflicts of interest. *Opeta v. Nw. Airlines Pension Plan for Contract Employees*, 484 F.3d 1211, 1217 (9th Cir. 2007) (under the de novo standard of review, new evidence may be admitted regarding, among other things: "the credibility of medical experts… [and] instances where the payor and the administrator are the same entity and the court is concerned about impartiality" (*quoting Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1026-27 (4th Cir. 1993)).

123. Pursuant to the coverage provided in the Plan, to ERISA 29 U.S.C. § 1132(a)(1)(B), and to applicable federal law, Ms. Romero is entitled to recover all benefits due under the terms of the Plan, and to enforce her rights under the Plan.

124. Ms. Romero is entitled to reinstatement of any other employee benefits that were terminated, discontinued, or suspended as a result of the termination of her disability benefits. She is entitled to a restoration of the *status quo ante* before LTD benefits were wrongfully terminated.

125. Pursuant to 29 U.S.C. § 1132(g), Ms. Romero is entitled to recover her attorneys' fees and costs incurred herein.

126. Ms. Romero is entitled to prejudgment interest on the benefits to which she is entitled and on her damages at the highest legal rate until paid.

**WHEREFORE**, on all claims, Ms. Romero prays for entry of judgment against Defendant as set forth in this Complaint, which includes:

A. All past and future LTD benefits under the terms of the Plan;

B. Clarifying and determining Ms. Romero's rights to future benefits under the terms of the Plan;

C. For any other benefits Ms. Romero may be entitled to receive under the Plan due to her eligibility;

D. An award of Ms. Romero's attorneys' fees and costs incurred herein;

E. An award of prejudgment interest on benefits and damages at the highest legal rate until paid; and

F. For such and further relief as the Court deems just, equitable, and reasonable.

Dated this 24th day of May, 2021.

RONSTADT LAW, PLLC

By: *s/ Erin Rose Ronstadt*
Erin Rose Ronstadt
Clayton W. Richards
Attorneys for Plaintiff

**RONSTADT LAW, PLLC**
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050